IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01518-REB-MEH
Criminal Action No. 06-cr-00365-REB

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

v.

GERALD R. HULSEY,

      Defendant-Movant.

---

**RECOMMENDATION ON MOTION TO VACATE PURSUANT TO 28 U.S.C. § 2255
AND MOTION TO MODIFY**

---

**Michael E. Hegarty, United States Magistrate Judge.**

Defendant Gerald R. Hulsey ("Hulsey" or "Movant") has pending before this Court a Motion to Modify Sentence [docket #30] and a Motion to Vacate and Set Aside Conviction or Correct Sentence Pursuant to 28 U.S.C. § 2255 [docket #33]. Under the provisions of 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72, these matters have been referred to me for recommendation. The matters are fully briefed, and the Court held an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings on May 18, 2009. Based on the record contained herein, I recommend[1] that the Motion to Modify be **denied** and that the Motion to Vacate be **denied**.

---

[1]The parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file

**BACKGROUND**

According to the Criminal Complaint in this matter, on November 11, 2005, the Defendant-Movant, Gerald Hulsey ("Hulsey") was arrested in Garfield County, Colorado on an outstanding warrant. Docket #1 at 2. Subsequent to the arrest, officers found stolen mail in Hulsey's possession. *Id.* He was incarcerated in the Garfield County Jail and remained in custody on state charges.

On September 11, 2006, the United States filed a complaint in federal court relating to the mail theft. Docket #1. Pursuant to a Writ of Habeas Corpus *Ad Prosequendum*, Hulsey was temporarily transferred from state custody for his initial appearance on the federal charges on September 12, 2006. Docket #5. Hulsey remained in federal physical custody until early April 2007. On March 30, 2007, after Hulsey pled guilty to possession of stolen mail, he was sentenced to 22 months' incarceration and three years' supervised release in the custody of the U.S. Bureau of Prisons (BOP). Docket #25 at 2-3. The Sentencing Minutes reflect the Court's order that any presentence confinement credit would be determined by the Bureau of Prisons pursuant to 18 U.S.C. § 3585. Docket #24 at 4, ¶ 12. At that time, Hulsey was remanded to the custody of the United States Marshal. *Id.* at ¶ 13. The District Court's Judgment mentions nothing about state charges or whether the federal sentence would run concurrently or consecutively with any state sentence. *See id.* As of April 2007, Plaintiff had been incarcerated for approximately 17 months.

According to Respondent, Hulsey was transferred back into state custody in April 2007 pursuant to its obligation under the September 11, 2006 writ, for the purpose of resolving Hulsey's

---

written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

state cases in Pitkin and Garfield counties. On April 4, 2007, the United States Marshal issued a detainer against Hulsey, which provides, "Prior to the subject's release from your custody, please notify this office at once so that we may assume custody of the subject for service of his Federal sentence of imprisonment." *See* docket #70-2. The document reflects that it, and presumably Hulsey, were received by Garfield County on April 6, 2007. *See id.*

On April 16, 2007, in Pitkin County, Hulsey pled guilty to theft and was sentenced to one year imprisonment with 265 days' credit for time served. Docket #48-5. The sentence was to run concurrently with the federal sentence imposed by the April 2, 2007 Judgment. *Id.* On May 24, 2007, in Garfield County, Hulsey pled guilty to two counts of burglary of a building and one count of motor vehicle theft, and was sentenced to 18 months' imprisonment with 540 days' credit for time served on each count. *See* dockets #48-2 through 48-4. The sentences were to run concurrently with each other and with the federal sentence imposed by the April 2, 2007 Judgment. *Id.* For each count, the court stated its intent that "after credit for time served the DOC sentence has been served in full." *Id.*

Despite the federal detainer issued and received on April 6, 2007, the Colorado Department of Corrections (CDOC) released Hulsey from incarceration on June 21, 2007. Hulsey testified that he was surprised to be released, expecting that he was going to be picked up by the BOP; however, he was told that his state and federal sentences were completed. Hearing Transcript, May 18, 2009 (Transcript), at 35: 11-25, 36: 1-5; 39: 9-12. He stated that he visited his state parole officer, Karen Walters, the day after his release, asked about the federal sentence and was told that she would contact the federal probation officer. *Id.* at 36: 17-25, 37: 1-5. He asserted that he did not report to federal probation within 72 hours of his release (as required by the Judgement), since the state parole

officer told him she would contact federal probation. *Id.*  Hulsey testified that he visited his state parole officers once every two weeks (he reported to three different officers between the time of his release and re-incarceration). *Id.* at 40: 23-25, 41: 1-4.  He states that he was told that everything was fine with federal probation since he was serving time for both state and federal charges, and that he could continue to report to the state parole officer. *Id.* at 41: 8-19.

Hulsey testified that, while on release, he immediately commenced work with Mountain Aviation, with whom he had worked before November 2005. Transcript at 12: 3-8.  Hulsey worked full-time as an aviation mechanic throughout the period of his release. *Id.* at 13: 3-5.  He also maintained a home with his girlfriend and her daughter. *Id.* at 21: 12-23.  Hulsey met all of his family obligations, including paying rent on his home, during the release period. *Id.* at 9: 2-4

On or about February 8, 2008, federal probation officer, Kathy Hyland, notified her supervisor, Chris Perez, that Hulsey had been released from the CDOC on June 21, 2007 without honoring the U.S. Marshal's detainer. Docket #70 at ¶ 2.  Perez assigned the matter to Kerrie Kent, another federal probation officer. *Id.* at ¶ 4.

On or about February 29, 2008, Kent called Hulsey and told him that there may be a problem with his file. *Id.*; *see also* Transcript at 16: 22-25, 17:1-10.  Hulsey testified that Kent called him again in March 2008 and told him that he may need to serve an additional 90 days in prison, but granted him a brief delay to allow him time to retain an attorney to help him attempt to resolve the problem. Transcript at 17: 11-25, 18: 1-23; 22:14-24.  Hulsey was unable to retain an attorney at that time; therefore, Kent sought an order for self-surrender. Docket #70 at ¶ 5.

Upon being advised of Hulsey's erroneous release from incarceration, the District Court entered an order on April 15, 2008 directing Hulsey to self-surrender to the BOP. Docket #26. On

May 5, 2008, Hulsey filed a letter to Judge Blackburn asking him to reconsider the order and stating that he was notified by Ms. Kent that he had been released early by mistake and would need to serve three to five additional months. Docket #27. On May 14, 2008, Judge Blackburn issued another order directing Hulsey to self-surrender on May 19, 2008 by 12:00 p.m. Docket #28. On May 19, 2008, Hulsey's current parole officer, John Jones, advised Hulsey that he was ordered to self-surrender that day to the FCI-Florence, which he did without incident. Transcript at 16: 4-6.

According to the BOP's Sentence Computation, Hulsey's sentence began on May 19, 2008, and will run (anticipating credit for good time) until December 22, 2009. Docket #47 at 6.

## PROCEDURAL HISTORY

On June 25, 2008, Hulsey filed a motion to modify sentence arguing that he should receive credit for pre-sentence detention and credit for the time he was at large after his erroneous release. Docket #30. Hulsey claims that his pre-sentence confinement should be credited to his federal sentence since that time had not been credited to any other sentences as of March 30, 2007, the date he was sentenced by the District Court. *Id.* He also contends in his motion that, under federal law, his sentence should be credited for the period after which he was released by the CDOC. *Id.* Subsequently, on July 18, 2008, Hulsey filed a motion to vacate, set aside or correct sentence arguing that his constitutional rights were violated by the Government when it failed to credit 429 days of pre-sentence confinement to his current sentence and when he was "re-sentenced" by the order to self-surrender in May 2008. *See* docket #33.

The Government responded to the motion to modify contending that Hulsey erroneously calculated any pre-sentence detention credit to which he might be entitled. Docket #34 at 2. The Government, then, countered Hulsey's motion to vacate arguing that pre-sentence confinement time

may only be credited to a federal sentence if it has not been credited to another sentence and, since Hulsey's pre-sentence confinement was credited to the state sentences, it may not be credited to his current federal sentence. *See* docket #45. Moreover, the Government notes that the U.S. District Court's Judgment mentions nothing about whether the federal sentence would run concurrently with state sentences; thus, pursuant to statute, the federal sentence is required to run consecutively to the state sentences. *Id.* Notably, the Government made no argument in its responses to the motions regarding whether Hulsey's sentence should be credited for the time he was at large. *See* dockets #34 and #45.

In his reply ("Counter-Response") to the motion to modify, Hulsey maintains that since the pre-sentence report recommended he was to receive 429 days of pretrial confinement credit, he assumed he was to receive that credit against his 22-month sentence. Docket #37 at 2. Later, however, in a reply to the motion to vacate, Hulsey "concedes the District Court has no authority to award jail-time credit, nor when his sentence began." Docket #47 at 3. Instead, he "asks the Court to vacate his sentence and modify his sentence to reflect credit for the time spent at large between 6/21/07 to 5/19/08." *Id.* at 3-4; *see also* Defendant's Proffer, docket #49 at 2 ("[s]ince the defendant is not receiving any pre-sentence credit, nor credit from the date defendant was sentenced and remanded to the federal marshall's [sic] . . . the defendant asks the Court to commence his sentence on the date that state authorities erroneously released defendant from state custody").

This Court set an evidentiary hearing at which it advised the parties that the Court would focus its analysis on whether Hulsey should be credited for his time at large following the erroneous release in June 2007. During the hearing, the Court asked Hulsey, through his attorney, to clarify whether he had abandoned his claim for pre-sentence confinement credit, and his attorney answered

in the negative. Hearing Transcript at 26:16-25, 27:1-6. Following the hearing, the Court ordered supplemental briefing and affidavits regarding the issues raised during the hearing.

The parties together submitted a Supplementation of Record and Stipulation of Facts and Hulsey submitted a supplemental memorandum in support of his petition. *See* dockets #70 and #71. The Court found this documentation insufficient in a legal analysis of the issues raised during the hearing. Thus, the Court ordered briefing on whether the Tenth Circuit's opinion in *White v. Pearlman*, 42 F.2d 788 (10th Cir. 1930) and its progeny apply to Hulsey's claims. On June 8, 2009, the parties each filed supplemental briefs as to this issue and Hulsey filed a reply to the Government's supplemental brief.

## DISCUSSION

Because applicant is proceeding without counsel, the Court must construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also United States v. Warner*, 23 F.3d 287, 290 (10th Cir. 1994). However, the Court should not be the *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**I.      Motion to Modify**

Hulsey filed his motion to modify sentence pursuant to 18 U.S.C. § 3582(c)(2); however, he makes no argument as to how the statute applies to his particular facts, and the Court sees no application here.

Construing his motion liberally as I must, the Court finds that Hulsey asks the sentencing court to modify the sentence by crediting time for pre-sentence detention and/or for the government's negligence in erroneously releasing him. A challenge to the execution of a sentence

should be petitioned pursuant to Section 2241.[2]  "A motion pursuant to § 2241 generally . . . [includes] such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Hernandez v. Davis*, No. 07-cv-02406-REB-MEH, 2008 WL 2955856, at *7 (D. Colo. July 30, 2008) (unpublished) (citing *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)). "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).

    A.    <u>§ 2241 Exhaustion Requirement</u>

A petitioner under Section 2241 must exhaust available administrative remedies. *See Dulworth v. Evans*, 442 F.3d 1265, 1269 (10th Cir. 2006). Here, Hulsey submitted copies of the following documents in support of his contention that he has exhausted administrative remedies: (1) Inmate Request to Staff dated June 11, 2008, (2) the Response to his Attempt at Informal Resolution dated June 14, 2008, (3) a Central Office Remedy Appeal dated August 30, 2008, No. 499413-A1, (4) a second Inmate Request to Staff dated September 9, 2008 regarding sentence computation issues, (5) a Response from the BOP Centralized Sentence Computation Center, undated, (6) a Response from the Central Office to Appeal No. 499413-A1 dated November 13, 2008, and (7) a computer printout titled, Administrative Remedy Generalized Retrieval, reflecting a status of "CLD" and a reason "DNY." *See* docket #50 at 10 and docket #66 at 2-9, 17. Hulsey's submissions were

---

[2]The Court notes that Hulsey originally filed an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241 on August 1, 2008. *See Hulsey v. Wilner*, Case No. 08-cv-01477-BNB. The Court in that action dismissed the application without prejudice for Hulsey's failure to exhaust his administrative remedies. *Id.* at docket #9. As set forth below, Hulsey has since exhausted his administrative remedies.

8

filed with no objections nor response from Respondent. *See* docket #53.

A review of these documents reflects that Hulsey raised both claims for pre-sentence detention credit and credit for his erroneous release in his administrative appeals. Therefore, the Court recommends finding that Hulsey has exhausted his administrative remedies as required under 28 U.S.C. § 2241.

        B.        <u>Claim for Pre-Sentence Detention Credit</u>

As stated above, Hulsey's most recent filings indicate that he concedes he may not be awarded credit for pre-sentence detention. Hulsey's attorney stated at the hearing, however, that Hulsey has not abandoned any of his original claims in this action. Nevertheless, the Court agrees that Hulsey may not be awarded credit for pre-sentence detention in this matter. Pursuant to 18 U.S.C. § 3585(b)(1), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences - as a result of the offense for which the sentence was imposed . . . that has *not* been credited against another sentence" (emphasis added).

Here, Hulsey was incarcerated from the date of his arrest on November 11, 2005 through the date of his federal sentencing on March 30, 2007 and through the dates of his sentences from Pitkin County on April 16, 2007 and from Garfield County on May 24, 2007. The Judgment rendering the federal sentence mentions nothing about whether the sentence will run concurrently or consecutively with Hulsey's state sentences, and this Court finds nothing in the record to indicate any request by Hulsey or his attorney regarding how the sentences would run. The state courts in Pitkin and Garfield Counties determined that Hulsey's state sentences would run concurrently with each other and the federal sentence. The Garfield County court stated its intent that Hulsey would be credited

for time served and that the 18-month sentence had been served "in full." Thus, the time Hulsey served from November 11, 2005 through May 24, 2007, a period of just over 18 months, was credited to the sentences from both Pitkin and Garfield counties. Pursuant to 18 U.S.C. § 3585(b)(1), Hulsey can receive no credit to his federal sentence for time credited to his state sentences. *See United States v. Eccleston*, 521 F.3d 1249, 1254 (10th Cir. 2008) (although petitioner's subsequent state sentence provided for concurrent service of the federal and state sentences, the state court's decision cannot alter the federal sentence).

Moreover, the Court notes that, pursuant to 18 U.S.C. § 3584(a), "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Here, the District Court mentioned nothing about whether Hulsey's federal sentence would run concurrently with other sentences; therefore, Hulsey's federal sentence is required to run consecutively to his state sentences.

The Court notes here that any claim by Hulsey that his federal sentence began to run in September 2006 or in March/April 2007 is without merit. Following his federal sentencing on March 30, 2007, and the Judgment entered on April 2, 2007, the U.S. Marshal issued a detainer[3] on April 4, 2007 upon Hulsey's transfer back to state authorities pursuant to the writ of habeas corpus *ad prosequendam*, and on April 6, 2007, the detainer and, apparently, Mr. Hulsey were received by Garfield County. He was subsequently released from the Colorado Department of Corrections without any transfer back to federal authorities. "When a state surrenders one of its prisoners to the

---

[3] Notably, the detainer informs the state authorities that the federal Judgment commits the subject to the custody of the U.S. Attorney General to serve the following sentence of imprisonment: . . . 22 months - Prison Sentence." Docket #70-2. It requests that, "[p]rior to the subject's release from your custody, please notify this office at once so that we may assume custody of the subject for service of his Federal sentence of imprisonment." *Id.*

10

federal government for the purpose of trial on charges pending there, a judgment and sentence upon conviction in the federal court does not begin to run, if the prisoner is delivered back to state authorities, until the prisoner is thereafter returned to federal custody and received at a federal penal institution for service of his sentence." *Williams v. Taylor*, 327 F.2d 322, 323 (10th Cir. 1964); *see also Binford v. United States*, 436 F.3d 1252, 1256 (10th Cir. 2006) (the prisoner's federal sentence began when he was finally received into federal custody for the purpose of serving his federal sentence, rather than when he was transferred to federal custody pursuant to an order for writ of habeas corpus *ad prosequendam*). Thus, Hulsey's federal sentence commenced on May 19, 2008 when he surrendered to the Bureau of Prisons.

This Court recommends that the District Court deny Hulsey's motion to the extent it requests credit to his federal sentence for pre-sentence confinement.

C.     Claim for Credit for Time at Large

In response to Hulsey's June 11, 2008 Inmate Request to Staff, the BOP denied Hulsey's request for pre-sentence detention credit but informed him, "by law, you may be able to get the jail credit from the time the State released you until you surrendered to FCI Florence." Docket #68-6 at 3.

The Tenth Circuit issued the seminal opinion on this issue: "It is our conclusion that where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, his sentence continues to run while he is at liberty." *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930). The Tenth Circuit has since analyzed *White* in the context of a claim for "liberty credit" and has developed the following test: "to obtain relief, the petitioner must show (1) the release must not be attributable to petitioner, (2) the action of the

authorities must amount to more than simple neglect, and (3) the situation brought about by petitioner's release and subsequent incarceration must be unequivocally inconsistent with fundamental principles of liberty and justice." *Filmore v. Hargett*, 1997 WL 57095, *2 (10th Cir. Feb. 11, 1997) (unpublished). Such application has become known as the "liberty credit doctrine."

The Third Circuit recently interpreted *White* and the liberty credit doctrine to require that, once the petitioner demonstrates he was released without fault, the burden shifts to the government to prove either that there was no negligence on the part of the imprisoning sovereign, or that the prisoner obtained or retained his liberty through his own efforts. *See Vega v. United States*, 493 F.3d 310, 319 (3d Cir. 2007). Thereafter, the First Circuit rejected the burden-shifting test stating that in habeas cases, the burden of proof is always on the petitioner. *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). The *Espinoza* court declined to define the outer reaches of the liberty credit doctrine, finding that the prisoner in that case was responsible in part for his release due to an escape. *Id.* at 90.

Certain recent circuit court opinions have interpreted an admonition in *White* that "[a prisoner] cannot be required to serve [his] sentence in installments," 42 F.2d at 789, to find that the liberty credit doctrine applies only to cases (involving facts similar to those in the case at bar) in which a prisoner's sentence has commenced but has been interrupted by an erroneous release, and does not apply to cases in which a prisoner's sentence has not yet commenced, but has been "merely delayed." *See Leggett v. Fleming*, 380 F.3d 232, 236 (5th Cir. 2004) (finding that where there is delay in the commencement of a sentence and no evidence that the governmental authority seeking to enforce the prisoner's sentence has erred, a prisoner should not be entitled to avoid service of that sentence); *see also Little v. Holder*, 396 F.3d 1319, 1322 (11th Cir. 2005) (finding that where the

prisoner has not been forced to serve his sentence in installments, but the sentence was merely delayed, the prisoner was entitled to no credit for his time at liberty).

Other circuit courts have rejected or otherwise ignored this distinction when analyzing cases involving similar facts to the case at bar (*i.e.*, erroneous release by the government). *See Vega*, 493 F.3d at 315-16 (recognizing the distinction, but not applying it to a case in which the prisoner was arrested and detained in a state facility, transferred to federal authorities to answer federal charges, returned to state custody at which time the U.S. Marshal lodged a detainer, then released from the state before commencing his federal sentence); *see also Clark v. Floyd*, 80 F.3d 371, 374 (9th Cir. 1996) (citing a prior Ninth Circuit opinion, the Court stated "[w]e did not concern ourselves with the fact that the prisoner had not served any part of his federal sentence prior to the time for which he was given credit," and giving credit to a prisoner for his time at liberty following an erroneous release prior to the commencement of his federal sentence) (citing *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937)).

The Tenth Circuit has not addressed this specific issue, and this Court has found no cases in this District analyzing whether the liberty credit doctrine is applied only to cases in which the federal sentence has commenced before the erroneous release. In this case, the Court has already found that Hulsey's federal sentence commenced upon his self-surrender in May 2008 *after* the time during which Hulsey was at liberty. Without Tenth Circuit precedent on this divided issue, the Court is reluctant to recommend adopting a different circuit's holding. Nevertheless, the Court need not recommend such a decision on this issue because, even if the liberty credit doctrine were properly applied to this case, the Court finds that Plaintiff is not entitled to credit for the time he spent at liberty between June 21, 2007 and May 19, 2008 pursuant to *White* and its progeny.

According to the test set forth by the Tenth Circuit for application of the liberty credit doctrine, Hulsey must prove that (1) his release was not attributable to him, (2) the Government's actions amount to more than simple negligence, and (3) the situation surrounding his release and subsequent incarceration are unequivocally inconsistent with the principles of justice. *See Filmore*, 1997 WL 57095 at *2; *see also Gipson v. True*, Case No. 96-3105-RDR, 1997 WL 685357, *2-3 (D. Kan. Oct. 6, 1997) (unpublished) (finding the petitioner's release was attributable to him in that, despite being clearly notified that he had a continuing obligation to serve time, the petitioner failed to alert the authorities to any error).

        1.     Release

Here, there is no dispute that Hulsey's release was not attributable to him. His unrebutted testimony reflects that he questioned authorities at the time of his release, since he believed he would be picked up by the BOP on June 21, 2007. The following day, he met with his state parole officer, informed the officer that he had expected to be transferred to the BOP, asked about his federal probation obligation and was told that he would meet that obligation by continuing to meet with the state parole officer.

        2.     Government actions

To prove whether the government is negligent in erroneously releasing the prisoner, the prisoner must show that the actions of the imprisoning sovereign, here the United States, constituted more than simple negligence. *See Vega*, 493 F.3d at 320; *see also Leggett*, 380 F.3d at 235-36.

The Court finds that the Government's actions in this matter did not constitute negligence. At the time Hulsey was released to state authorities in April 2007, the Government issued a detainer that was received by the State on April 6, 2007. Thus, there is no evidence the United States had

any participation in the erroneous release itself. Then, when the federal authorities were notified on February 8, 2008 that Hulsey had been erroneously released despite the properly issued detainer, the federal probation officer, Kerrie Kent, responded by contacting Hulsey on February 29, 2008 to notify him that there may be a problem with his file. According to the testimony and stipulated facts, Kent contacted Hulsey again in March 2008, granted him a brief delay to allow him time to retain counsel, then when Hulsey was unable to retain counsel, sought an order to self-surrender in April 2008.

Although approximately two months passed from the time the Government was notified of Hulsey's erroneous release to the time at which the Government requested an order for self-surrender, the Court finds that the Government's actions in responding to news of the erroneous release were reasonable under the circumstances, especially considering the time period granted to Hulsey within which to seek counsel. Hulsey asks that the Court find the Government negligent in failing to track the status of the detainer after it was issued; however, Hulsey provides no legal support, and the Court has found none, imposing a duty upon the United States to monitor the status of each of its numerous detainers issued every year. Therefore, the Court finds no negligence (and, certainly, nothing more than simple negligence) on the part of the United States in the erroneous release of Hulsey in June 2007.

       3.     Principles of Justice

In this case, the Court finds that the situation surrounding Hulsey's release and subsequent incarceration are consistent with the principles of liberty and justice. Although it is certainly commendable that Hulsey immediately commenced work with his former employer, established a home with his girlfriend and her daughter and met his family obligations during his time at large,

the Court has already determined that Hulsey's federal sentence was to run consecutively to his state sentences, and he had not begun the federal sentence before his release. Therefore, it is reasonable that Hulsey would serve his 22-month sentence starting at the time of his self-surrender to the federal authorities on May 19, 2008.

The Court recommends finding that Hulsey has not proven that the Government's actions amounted to more than simple negligence and that the situation surrounding his release and re-incarceration unequivocally contradicted the principles of liberty and justice. As such, this Court recommends that the District Court deny Hulsey's motion requesting credit for the time he was at large.

## II.     Motion to Vacate, Set Aside or Correct Sentence

On July 18, 2008, Hulsey filed his motion to vacate or correct his federal sentence alleging that his re-incarceration violated the double jeopardy clause of the Fifth Amendment, constituted an *ex post facto* violation, and resulted in violations of his rights to due process. Docket #33 at 4-10. In addition, Hulsey claims that Respondent breached the plea agreement by failing to abide by recommendations in the pre-sentence report "that Movant receive 429 days jail-credit towards Movants [sic] sentence." *Id.* at 6-7.

The Government responds that the plea agreement is devoid of any reference or agreement to credit for pretrial confinement and that the presentence report only "estimated" a certain number of days for pretrial confinement credit, but specifically noted that pretrial confinement would be computed by the Bureau of Prisons. Docket #45 at 2. The Government contends that, if the plea agreement had contained a provision requiring the Government to "abide by whatever recommendations the Pre-Sentence Report made pertaining to the movant's sentence," then the

Government would not have filed a motion for downward departure and Hulsey would be serving a 33-month sentence recommended by pretrial services, rather than the 22-month sentence he received. *Id.* at 4. In addition, the Government argues that there was no re-sentencing upon the order to self-surrender and, thus, no constitutional violations arising therefrom. *Id.* at 3-5.

After objecting that he did not receive a complete copy of the Government's response nor copies of documents referred to therein (no copies of referenced documents were attached to the response), Hulsey proceeded to "waive these errors of the Government," and argues that since his sentence began after he was originally sentenced on March 30, 2007, he was then "re-sentenced" upon his self-surrender in May 2008. Docket #47 at 1-3. Hulsey, then, "concedes the District Court has no authority to award jail-time credit, nor when his sentence began . . . [y]et the Sentencing Court is entitled to credit Movant for time spent at large after being erroneously released by state officials." Docket #47 at 3. Hulsey asks the Court to vacate or modify his sentence to credit him for time spent at large between June 21, 2007 and May 19, 2008. *Id.* at 3-4. In a subsequent "proffer" of copies of supporting documentation, Hulsey argues that "[t]he error in pre-sentence credits occurred when the federal Bureau of Prisons had not calculated defendants [sic] Pre-sentence credits into his Sentence time computation." Docket #49 at 2. Hulsey further repeats, "[s]ince the defendant is not receiving an Pre-sentence credit, nor credit from the date defendant was sentenced and remanded to the federal Marshall's [sic] the defendant asks the Court to commence his sentence on the date that State Authorities erroneously released defendant from State custody." *Id.*

A prisoner in federal custody may move the court for an order vacating, setting aside, or correcting his sentence upon the ground that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2009). Upon a determination that relief is warranted, the court may vacate and set the judgment aside and discharge the prisoner, resentence him, grant a new trial, or correct the sentence. *Id.*

A Section 2255 petition "attacks the legality of detention . . . and must be filed in the district that imposed the sentence." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) (citation omitted). "The purpose of section 2255 is to provide a method of determining the validity of a judgment by the court which imposed the sentence, rather than by the court in the district where the prisoner is confined." *Id.* (citing *Johnson v. Taylor*, 347 F.2d 365, 366 (10th Cir. 1965)). "The exclusive remedy for testing the validity of a judgment and sentence, unless it is inadequate or ineffective, is that provided for in 28 U.S.C. § 2255." *Id.*

Here, Hulsey originally claimed that the Government breached the plea agreement by failing "to abide by whatever recommendations the presentence report made pertaining to movant's sentence," and "[t]he presentence report made the recommendation that movant receive 429 days jail-credit towards movant's sentence." Docket #33 at 5-6. The Court finds that, as this claim alleges that the Government failed to award him credit, the claim challenges the execution of Hulsey's sentence rather than the validity of the sentence itself and is, therefore, properly brought pursuant to 28 U.S.C. § 2241. *See Bradshaw*, 86 F.3d at 166. Although the Court construes Hulsey's filings liberally, it would be a stretch to conclude that Hulsey has exhausted this specific claim as there is no mention in the administrative grievance materials regarding a breach of plea agreement. *See* docket #66. Even were the Court to find that Hulsey has exhausted his claim, however, the premise of the claim is that he was denied pre-sentence detention credit to which he

believed he was entitled. The Court has already determined, as a matter of law and under a § 2241 analysis, that Hulsey is not entitled to pre-sentence detention credit, since his time served was credited to his state sentences and his federal sentence ran consecutively to his state sentences. Therefore, the Court recommends that the District Court deny Hulsey's breach of plea agreement claim.

Hulsey's remaining claims arise from his faulty premise that he was "re-sentenced" at the time of his self-surrender. Docket #33 at 5, 8, 9. Again, as determined herein, Hulsey's 22-month federal sentence was to run consecutively to his state sentences, and was to commence upon delivery to federal authorities following completion of his state sentences. Therefore, the District Court committed no error when it ordered Hulsey to surrender to federal authorities on May 19, 2008 to serve his federal sentence. Consequently, this Court recommends finding that Hulsey suffered no violations of the double jeopardy and due process clauses of the Fifth Amendment, nor an *ex post facto* violation in any improper "lengthening" of Hulsey's sentence. Since Hulsey has failed to demonstrate any violation of the Constitution or laws of the United States or any other ground on which a Section 2255 motion may be granted, the Court recommends that the District Court deny Hulsey's motion.

## CONCLUSION

Based upon the foregoing, and the entire record herein, this Court hereby RECOMMENDS that the Motion to Modify Sentence [filed June 25, 2008; docket #30] be **denied**, and that the Motion to Vacate and Set Aside Conviction or Correct Sentence Pursuant to 28 U.S.C. § 2255 [filed July 18, 2008; docket #33] be **denied** and Hulsey's claims raised therein be **dismissed**.

Dated at Denver, Colorado, this 30th day of June, 2009.

            BY THE COURT:

            <u>s/ Michael E. Hegarty</u>
            Michael E. Hegarty
            United States Magistrate Judge